IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

KATHLEEN F. FIGIE,

                              Plaintiff,

        vs.                                              Civ. Action No.
                                                         5:04-CV-0700
                                                         (NAM/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

RHINEHART LAW OFFICE                      ROBERT F. RHINEHART, ESQ.
200 Syracuse Building
224 Harrison Street
Syracuse, NY 13202

FOR DEFENDANT:

HON. GLENN T. SUDDABY                     WILLIAM H. PEASE, ESQ.
United States Attorney for the            Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL                 BARBARA L. SPIVAK, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                        PETER S. KRYNSKI, ESQ.
                                          Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Kathleen F. Figie, who suffers from degenerative disc disease, fibromyalgia, and a thumb condition which required two ligament reconstruction surgeries, has commenced this proceeding to challenge an administrative determination of the Social Security Administration that she is not disabled, and thus ineligible to receive Supplemental Security Income ("SSI") Social Security benefits.  Plaintiff maintains that the finding of no disability – which is based heavily upon a rejection of opinions of her treating physician and her subjective testimony, both suggesting that she is limited in her ability to sit, stand and walk – was not based upon substantial evidence and that in discounting contrary opinions of her treating physician and her subjective testimony, the Administrative Law Judge ("ALJ") deciding the matter failed to properly explain his rationale for doing so.

Based upon a thorough review of the record which was before the agency, I recommend a finding that the ALJ's decision gave inadequate consideration to opinions of plaintiff's treating physician and her subjective

testimony, without properly explaining the reasons for doing so.

Accordingly, I recommend that the Commissioner's determination of no

disability be vacated, and the matter remanded to the agency for further

proceedings.

I.    BACKGROUND

_____Plaintiff was born on December 16, 1950; at the time of the hearing

in this matter, she was fifty-two years of age.  Administrative Transcript at

pp. 52, 189.[1]  Plaintiff stands five foot three inches in height, weighs 127

pounds, and is right hand dominant.  AT 189.  Plaintiff is separated and

lives alone in an apartment in Syracuse, New York.  AT 53, 55, 189.

Plaintiff possesses a driver's license, owns a vehicle, and drives

approximately one time per week.  AT 189-90.

Plaintiff is a high school graduate, and over the years has held

various employment positions, predominantly part-time, over the years.

AT 191-93.  Over that time plaintiff has worked as a school aide, with

responsibilities for monitoring students in the cafeteria and at the

playground; a telemarketer; a short order cook; and a diet counselor.  AT

---

[1]    Portions of the Administrative Transcript and evidence before the
agency, submitted by the Commissioner together with her answer in this matter, Dkt.
No. 4, will be cited in this report and recommendation as "AT ___."

85-92, 191-92.  Plaintiff last worked on October 20, 2001, two days before

undergoing her first thumb surgery.  AT 193.

Plaintiff's medical records reflect that for several years she has

complained of chronic back pain and related symptomology.  Plaintiff has

treated with Dr. Antonio V. Marasigan extending over a significant period

of time, dating back as far as July of 1992, when she reported having

injured her back picking up heavy objects while at work.[2]  AT 162.

Following that report plaintiff was seen sporadically by Dr. Marasigan,

leading up to magnetic resonance imaging ("MRI") testing of her lumbar

spine on December 18, 1995.  AT 159-62; *see* AT 158.  That MRI testing

reflected degenerative disc changes at L3-l4 and L4-L5, with central mild

focal bulging at L3-L4 and a small central focal disc herniation at L4-L5,

but with no evidence of root compression.  AT 158.  While plaintiff

continued to complain of lower back pain and surgery was at one point

discussed, there was no indication of anything other than a conservative

course of treatment, including exercises, and the prescription of pain

medication, including Esgic Plus 1, Darvocet, Soma, Lortab, Ultram

_____

[2]     Plaintiff's back condition was aggravated by an incident occurring in June
of 2001 when she fell from a boat into the water.  AT 177.

Hydrocodone, Carisoprodol, Naprosyn, UltraCet, and Prilosec.[3]  AT 139, 154-56, 159-60, 203.

A CT scan of the plaintiff's lumbar spine, conducted in or about 2003, reflected evidence of disc bulging at L4-L5 and at L5-S1, with no definite evidence of herniation at either of those levels and additionally no clinical evidence of nerve root damage.  AT 179.  In his report of that CT scan and his follow up with the patient, Dr. Marasigan indicated that the plaintiff "can be treated conservatively with pain medication" and was advised to exercise, "and avoid prolonged sitting or heavy lifting."  AT 179.

In addition to her back pain, plaintiff has suffered the residual effects of an injury suffered in 2001 when she twisted her left thumb while picking up a bucket at work.  AT 109.  After an initial course of conservative treatment x-rays and other testing were conducted, revealing instability of the CMC joint of the left thumb and warranting consideration for reconstructive surgery of the CMC joint.  AT 109-10.  That surgery was performed on October 22, 2001 by Dr. Walter H. Short, and plaintiff additionally treated with pain relievers, including Darvocet, Percocet,

---

[3]       Over the course of time Dr. Marasigan makes passing reference to the possibility of fibromyalgia.  *See*, *e.g.*, AT 155.  While plaintiff was referred to Dr. Patrick Ricciardi for her fibromyalgia in September of 1998, the record contains no indication that she followed up on that referral.  AT 153.

Vicodin and Tylenol.  AT 111.

In June of 2002, plaintiff underwent a consultative examination, where it was noted that plaintiff was still unable to use her left thumb at all. AT 141.  In that report the consultative examiner, Dr. Kalyani Ganesh, reported that plaintiff's grip strength in the right was 5/5, but only between 2 and 3/5 in the left , though the examiner noted that plaintiff was able to "tie a bow, button a button, unbutton, zip, open a cap, [and] pick up a plate and a coin" using her right hand and some of the fingers on her left.  AT 141, 194.

In a July 2002 appointment with Dr. Short plaintiff reported experiencing improvement in her thumb, and that she was receiving physical therapy.  AT 174.  As a result of an examination performed the following month, Dr. Short reported that plaintiff had suffered from rapid progression of degenerative arthritis of her thumb.  AT 173.  Plaintiff appears to have undergone additional surgery on her thumb in March of 2003, although the records associated with that surgery are not included in the materials now before the court.  AT 194, 215.  Plaintiff received physical therapy after both surgeries to assist her in regaining the use of her left thumb.  AT 201-03.

During the hearing plaintiff testified to suffering from pain, as a result of her bulging discs, in her back and radiating down her left leg.  AT 196-97.  Plaintiff states that as a result of her pain she is unable to sit for prolonged periods.  AT 196, 204.

Plaintiff also encounters difficulty standing and walking due to her back condition, experiencing severe cramping and pain in her legs and back if she walks for too long.  AT 204.

According to her testimony, the plaintiff's physical conditions have greatly affected her life, including her daily, nonwork activities.  Prior to her injuries plaintiff was extremely active in sports.  AT 75.  Now, plaintiff has difficulty with housework, does not sleep well, requires assistance with the laundry, and is only able to drive approximately one time per week.  AT 190, 205, 209, 213-14.  Plaintiff is also limited in her ability to walk, estimating that she is able to walk only one block at a time.  AT 216.  Plaintiff's daily activities are limited to reading, going to the mall, and attending church, though without the ability to sit or stand for too long, and swimming in her neighbor's pool.  AT 205-08.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

-7-

Plaintiff applied to the Social Security Administration for SSI benefits in or about April or May of 2001; in her application, as later amended, plaintiff alleged a disability onset date of October 20, 2001.  AT 52-56. That application was denied on or about July 25, 2002.  AT 27-32.

At plaintiff's request, *see* AT 33, a hearing was held on September 4, 2003 before ALJ Joseph Medicis, Jr. to address plaintiff's claim for SSI benefits.  *See* AT 186-222.  Following that hearing, ALJ Medicis issued a written decision, dated December 2, 2003, determining that at the relevant times plaintiff was not disabled, within the meaning of the Act, and thus upholding the denial of benefits.  AT 17-23.  In his decision, ALJ Medicis applied the now-familiar five step disability test, determining at step one that the plaintiff had not engaged in substantial gainful activity at any relevant time.  AT 18.  ALJ Medicis went on to find that plaintiff's degenerative disc disease did, but that her left thumb condition did not, constitute a substantially severe impairment to significantly limit her ability to perform basic work activities, and went on to conclude that plaintiff's degenerative disc disease did not meet or equal one of the listed, presumptively disabling impairments set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 18-19.

ALJ Medicis next determined plaintiff's residual functional capacity in order to assess whether she retains the ability to perform either her past relevant work or other work available in significant numbers in the national economy.  AT 19-20.  Reviewing the medical evidence, the ALJ concluded that plaintiff retains the ability to perform a full range of light work, without substantial restriction, rejecting in that regard the opinion of Dr. Marasigan, rendered in September 2003, expressing a limitation on plaintiff's ability to sit, stand, and walk for a maximum of two hours each day as not being supported by clinical evidence in the record.[4]  AT 20.

Applying his light work determination to plaintiff's circumstances, ALJ Medici concluded that plaintiff would be able to return to her various prior positions, at least on a part-time basis, but giving her the benefit of

---

[4]      Under the regulations, light work is defined as

involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

the doubt, assumed that because of her fine dexterity limitations, she may

be unable to perform a full range of the requirements of such positions,

and as such proceeded to step five of the disability determination process.

AT 20.  At step five, utilizing as a framework the medical-vocational

guidelines set forth in the regulations (the "grid"), 20 C.F.R. Pt. 404,

Subpt. P, App. 2, and applying his light work finding as well as various

other relevant factors, concluded that a finding of no disability was

warranted under Rule 202.13 of the grid.  AT 20-21.

ALJ Medicis' opinion became a final determination of the agency

when on April 29, 2004, the Social Security Administration Appeals

Council denied plaintiff's request for review.  AT 4-6.

B.      This Action

Plaintiff commenced this action on June 18, 2004.  Dkt. No. 1.  Issue

was thereafter joined by the Commissioner's filing on September 24, 2004

of an answer, accompanied by an administrative transcript of the

proceedings and evidence before the agency.  Dkt. Nos, 3, 4.  With the

filing of plaintiff's brief on October 13, 2004, Dkt. No. 5, and that on behalf

of the Commissioner on December 27, 2004, Dkt. No. 8, this matter is

now ripe for determination, and has been referred to me for the issuance

of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(d).[5]  *See also* Fed. R. Civ.

P. 72(b).

III.    DISCUSSION

    A.    Scope Of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, her

decision should not be affirmed even though the ultimate conclusion

---

[5]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by then-Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp.2d at 148.  If, however, the correct legal standards have been

applied and the ALJ's findings are supported by substantial evidence,

those findings are conclusive, and the decision should withstand judicial

scrutiny regardless of whether the reviewing court might have reached a

contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13

F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §

405(g).

The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more

than a mere scintilla'" of evidence scattered throughout the administrative

record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To

determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record,

examining the evidence from both sides, because an analysis of the

substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dept. of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *Parker*, 626 F.2d at 235; *Simmons v. U.S. R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir.

1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

>    B.    Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] " 42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the

-14-

claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

      C.    Evidence In This Case

      Pivotal to the ALJ's finding of no disability is his rejection of opinions

of plaintiff's longstanding care provider, Dr. Marasigan, to the effect that

plaintiff's ability to sit, stand and walk are markedly limited, and his

rejection – indeed, his failure to even explain – plaintiff's subjective

complaints regarding her pain and the limitations which it presents.

Plaintiff challenges both of these shortcomings, arguing that they are fatal

to the determination and should result in the finding of no disability.

      1.    Treating Physician

      Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.[6]  *Veino*, 312 F.3d at 588;

*Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling,

however, if contrary to other substantial evidence in the record.  *Veino*,

312 F.3d at 588.  Where conflicts arise in the form of contradictory

medical evidence, their resolution is properly entrusted to the

Commissioner.  *Id.*

In deciding what weight, if any, an ALJ should accord to medical

opinions, he or she may consider a variety of factors including "[t]he

duration of a patient-physician relationship, the reasoning accompanying

the opinion, the opinion's consistency with other evidence, and the

physician's specialization or lack thereof[.]"  See *Schisler v. Sullivan*, 3

---

[6]      The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.   When we do
> not give the treating source's opinion
> controlling weight, we apply [various factors]
> in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

The record firmly establishes that plaintiff suffers from two conditions, degenerative disc disease and fibromyalgia, capable of imposing the limitations noted in Dr. Marasigan's opinions.  In his written assessment of plaintiff's functional disabilities, Dr. Marasigan opines that plaintiff may occasionally lift up to fifteen pounds and up to ten pounds frequently, but is limited to sitting, standing and walking for a total of two hours in an eight hour workday and only one hour at a time without interruption.  AT 182-83.  Undeniably these limitations, which appear to be potentially internally inconsistent, are in conflict with results of a consultative, independent medical examination performed by Dr. Ganesh in June of 2002, in which he discerned "[n]o physical limitation to sitting,

standing, walking, climbing, and bending." AT 141.  While it is true, as
defendant argues, that it is up to the ALJ to weigh conflicting evidence,
the ALJ is not free to reject opinions of a treating physician without full
explanation and convincing reasoning.  *Richardson v. Barnhart*, 443
F.Supp.2d 411, 417 (W.D.N.Y. 2006).  In this instance the ALJ's rejection
of Dr. Marasigan's opinions are tersely discounted by the ALJ without
proper explanation.[7]

>    2.    Pain

During the hearing plaintiff testified to experiencing significant pain,
requiring her to resort to pain medication and severely limiting her
activities, including her ability to sit, stand, and walk.  *See*, *e.g.*, AT 196,
204.  Arriving at his RFC determination ALJ Medicis does not address or
explain his reasoning for rejecting plaintiff's complaints of disabling pain.

An ALJ must take into account subjective complaints of pain in
making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),

---

[7]    In his opinion, the ALJ succinctly states that

[t]he odd restrictions on sitting and activities on one's [sic] feet, placed by
Dr. Marasigan, do not meet [the requirements that a treating source's
opinion be well supported by clinical and/or laboratory reporting from the
source], and are thus granted no governing weight herein.  Essentially,
these restrictions are not supported by the medical evidence.

AT 20.

416.929(a), (d).  When examining the issue of pain, however, the ALJ is

not required to blindly accept the subjective testimony of a claimant.

*Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective

testimony, including testimony concerning pain*.  See Mimms v. Heckler*,

750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that

discretion the ALJ must consider a variety of factors which ordinarily

would be relevant on the issue of credibility in any context, including the

claimant's credibility, his or her motivation, and the medical evidence in

the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL

59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.)

(citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an

independent judgment concerning the actual extent of pain suffered and

its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[8]  *Barnett*, 13 F. Supp.2d at 316; *see also*

---

[8]       In the Act, Congress has specified that a claimant will not be viewed as
disabled unless he or she supplies medical or other evidence establishing the

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608

---

existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir. 1984).

It is fairly apparent from her testimony and medical records that plaintiff suffers from some degree of discomfort as a result of her back condition and fibromyalgia.  The fact that she suffers from discomfort, to be sure, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

As I have previously noted, plaintiff suffers from both degenerative disc disease and fibromyalgia, both of which are capable of producing the level of pain testified to by plaintiff.  Indeed, fibromyalgia has been recognized as a potentially severe impairment that may support a claim of disability under the Act.[9]  *Green-Younger v. Barnhart*, 335 F.3d 99, 108

---

[9]     Fibromyalgia is described by a leading medical source as:

[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause.  The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites.

(2d Cir. 2003); *Lisa*, 940 F.2d at 44-45.  Addressing the condition, the

Seventh Circuit has explained:

> Fibromyalgia . . . [is] a common, but elusive and mysterious
> disease, much like chronic fatigue syndrome, with which it
> shares a number of features.  Its cause or causes are
> unknown, there is no cure, and of greatest importance to
> disability law, its symptoms are entirely subjective.  There are
> no laboratory tests for the presence or severity of fibromyalgia.
> The principal symptoms are "pain all over," fatigue, disturbed
> sleep, stiffness, and – the only symptom that discriminates
> between it and other diseases of a rheumatic character –
> multiple tender spots, more precisely 18 fixed locations on the
> body (and the rule of thumb is that the patient must have at
> least 11 of them to be diagnosed as having fibromyalgia) that
> when pressed firmly cause the patient to flinch.  All these
> symptoms are easy to fake, although few applicants for
> disability benefits may yet be aware of the specific locations
> that if palpated will cause the patient who really has
> fibromyalgia to flinch. . . . Some people may have such a
> severe case of fibromyalgia as to be totally disabled from
> working, but most do not[.]

*Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996) (internal citations

omitted).

    As may be gathered, by its very nature fibromyalgia is not always

readily susceptible to detection or verification through clinical testing or

other objective means.  For this reason, courts have found that the

unavailability of clinical tests alone is not a basis for an ALJ to reject a

---

Stedmans Medical Dictionary (27th ed. 2000).  Fibromyalgia is also commonly referred
to as fibrositis.  *Green-Younger v. Barnhart*, 335 F.3d 99, 101 n.1 (2d Cir. 2003).

physician's diagnosis of fibromyalgia on the ground that it is not supported by objective clinical findings.  *See Younger-Barnhart*, 335 F.3d at 168; *Cruz v. Apfel*, 97-CV-1170, 1998 U.S. Dist. LEXIS 23385, at *22-*23 (N.D.N.Y. Nov. 4, 1998) (DiBianco, M.J.) (citing *Lisa*, 940 F.2d at 44), *adopted*, 1998 U.S. Dist. LEXIS (23384 (N.D.N.Y. Dec. 21, 1998).  As was explained by the Second Circuit,

> [i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather, it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients.

*Lisa*, 940 F.2d at 45 (quoting *Preston v. Secretary of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988)).

The suggestion of fibromyalgia is fortified by the determination of Dr. Ganesh, who based upon his examination noted that "[c]laimant has 16 tender points and 7 control points which are tender."  AT 141.  Despite evidence in the record that plaintiff suffers from fibromyalgia, including a potential diagnosis to that effect, and notwithstanding the requirements of the regulations, ALJ Medicis failed to explain his reasons for rejecting plaintiff's complaints of disabling pain.  This failure is fatal to his

-24-

determination and warrants reversal and remand to the agency for further

proceedings.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff, who suffers from a thumb condition which is only modestly

restrictive, also suffers from far more potentially limiting conditions,

including degenerative disc disease and fibromyalgia.  And while, to be

sure, there is no evidence of any nerve damage or disc herniation, and it

does not appear that plaintiff followed up on a referral for treatment for

fibromyalgia, and only a conservative course of treatment has been

followed, it nonetheless remains clear that plaintiff suffers from some level

of pain, requiring her to undertake a longstanding and intensive use of

pain medication and substantially limiting her activities.  The failure of ALJ

Medicis to consider plaintiff's limitations and to explain the basis for

rejecting her complaints of pain, together with his ill-explained rejection of

opinion from plaintiff's treating physician, undermines his finding of no

disability and warrants reversal of that finding.

Based upon the foregoing, it is hereby

RECOMMENDED that plaintiff's motion for judgment on the

pleadings be GRANTED, the Commissioner's determination of no

disability VACATED, and the matter REMANDED to the agency for further consideration.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties electronically.

Dated:      October 18, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\socialsecurity\Figie.wpd

-26-